Mr. Zyrkowski. Thank you, your honors, and may it please the court. My name is Carol Zyrkowski, I'm amicus curiae counsel arguing in support of appellant Ray Wallace Mettetal. Your honors, this case is about the federal court's power to vindicate their own authority. Could you be so kind as to speak up for me, I want to be sure I hear what you're saying. Yes, your honor, my apologies. Your honors, this case is about the federal court's power to vindicate their own authority. The relief Mr. Mettetal now seeks can and should be granted based solely on rulings already made in this court's prior opinions. This court and the district court thus have jurisdiction to expunge Mr. Mettetal's arrest and conviction records under both prongs of Kekkonen. Your argument is only about jurisdiction, correct? That is all the court needs to decide in this case. Whether there's jurisdiction to expunge, not whether in fact expungement should be granted here. Your honor, that's all that is necessary for this court to reach. I believe that if this court grants jurisdiction under the second prong of Kekkonen, which is the prong enabling the court to vindicate its own authority, there's not much daylight between that and granting the petition to expunge. Well, wouldn't the district court be in the best position to determine that? I think that's certainly a ruling that this court has made. For the expungement, you argued that this court should directly expunge. That's correct, your honor, and I think that's because in this case, this court's prior rulings make it clear that the arrest and conviction were unlawful, and if this court chooses to... Were you seeking expungement of the FBI records? No, your honor. This would be judicial records only. What judicial records? The decision by the district court vacating the conviction and the decision by the Fourth Circuit that the conviction should be vacated. You're seeking expungement of the case law? Yes, and an order granting expungement, and my understanding is that once Mr. Metatol has an order in hand granting expungement, he can then go and take that order to expunge any other records that he might wish to seek expungement for. But the opinion is an opinion that stresses that the courts have limited jurisdiction, and particularly over equitable matters, and it seemed to me to sound inequity that you were asking for equitable expungement because that was the thrust of it because there were an absence of other convictions, and 20 years had passed since the arrest, and there was harassment and inability to get staff privileges, and given the equitable thrust of the petition, why would we have jurisdiction? We have five circuits saying that courts don't have jurisdiction to grant expungement in those kind of situations. That's correct, Your Honor. I completely agree that courts lack ancillary jurisdiction to expunge criminal records based on purely equitable arguments. Those five circuits that you referenced, however, all cabin their logic to purely equitable petitions. In the recent case of Wahia, it says with this holding we joined five of our sister circuits, each of which has read Kekkonen to preclude the assertion of ancillary jurisdiction over a request to expunge judicial records on purely equitable grounds, and then they cite those other four circuits or other five circuits. No circuit has rejected this understanding of Kekkonen. Your Honor, I do not dispute at all that courts lack jurisdiction to expunge criminal records on equitable grounds. Mr. Metatol, however, makes a legal as well as an equitable argument on page 72. Are you making an argument on equitable grounds? No. No, Your Honor. What are we supposed to think about the inability to get staff privileges? Twenty years had passed, lack of other convictions. I mean, it may or may not be the case. I have no idea whether it's correct, but it certainly is an equitable petition. Your Honor, those are equitable arguments in Mr. Metatol's petition. He also makes a legal argument. That was certainly the way the district court looked at it. But suppose it's a legal argument. I mean, whatever that is, Congress still is the one that gives us jurisdiction. And Congress has provided for expungement in certain narrow circumstances, which is where there's an inaccuracy or mandating expungement of DNA records where a military conviction is overturned. But here I don't see any statutory. I mean, it's just a question of law. I don't see any statutory grant of jurisdiction. Now, Colorado River says where there's been a statutory grant of jurisdiction, we decide the case. But if we have no statutory grant of jurisdiction from the Congress that creates our jurisdiction, then we don't have jurisdiction to decide the case. Well, Your Honor, Conan recognizes that the court does retain some ancillary jurisdiction in two particular circumstances. And those circumstances are, first, if the facts are sufficiently intertwined, and, second, if there is a decree for the court to manage its proceedings or effectuate its decrees. And both of those circumstances are present here, as four other circuits have recognized. How can it be factually interdependent when we're talking about something, equitable grounds that surface years after the underlying proceeding? I mean, that would be the widest extension of ancillary jurisdiction that I could ever imagine. I agree with you, Your Honor, that this court does not have jurisdiction to consider Mr. Medetol's equitable arguments. I'm only arguing, Your Honor, that this court has jurisdiction to expunge because this court- But we don't have jurisdiction. We haven't been given jurisdiction to expunge on legal grounds. There is no equitable expungement. Do you agree with that? I agree with that. But there's no statute that gives us- If Congress wants to enact a statute on expungement, it can do so. But it's enacted three or four statutes on expunction and there's nothing like this. Your Honor, four other circuits have devised and applied a rule holding that where a conviction has been found unlawful, where a conviction or arrest has been found unlawful, ancillary jurisdiction still exists to expunge that petition. They've done that in the same rulings where they've denied jurisdiction to consider equitable arguments. And there's a case, right? The Fourth Circuit had to-this was before my time-but as I understand it, the Fourth Circuit had to twice instruct that this conviction be vacated first and then again. Like, no, we mean it. When we said vacate the conviction, we meant vacate the conviction. So your client's argument would be sort of reading from the legal part of his petition. Look, the charges against him were dismissed. The police did not have probable cause. The Fourth Circuit Court of Appeals instructed to exclude the evidence. And so the argument would be not on the merits-I'm not making a merits argument at all-but that jurisdictionally speaking, the Fourth Circuit or the courts can vindicate their authority, make their orders meaningful by expunging the record in this case. That's exactly correct, Your Honor. Because the courts that have said this ancillary jurisdiction exists, they put it under that second prong, right, the vindication prong? Yes, Your Honor. I believe it exists under both, but the courts that have spoken directly to this matter have generally ruled under Kekone and Prong 2. That's correct. And then I have a question. I do think I understand your argument on jurisdiction, but you said that you thought there was very little space between jurisdiction under that prong and the merits. But I thought that the case law on that was to the contrary, that even assuming a conviction is vacated is still quite an exceptional remedy to expunge the records. There is actually not much case law from any circuit that exists on the substantive standard of when to grant an expungement. But there's some, and it all says exceptional remedy, not matter of course. Yes, Your Honor. But I believe that courts have reserved their jurisdiction to expunge unlawful convictions and arrests for a particular purpose, and what purpose- But isn't it going to look something like egregious police misconduct in a case like this? Exactly, Your Honor. But there's nothing in the petition that really alleges egregious police misconduct. This case doesn't sound to me like that egregious police conduct, but maybe it is. This court has found that his entire criminal proceeding from the moment he was arrested until the end of his second Fourth Circuit appeal in 2002, none of that had any grounding in any legal foundation whatsoever. It is weird, right, because there can be a major Fourth Amendment violation, and yet the physical evidence is the physical evidence. It doesn't cast into any doubt the reliability of the conviction. It's an unusual kind of constitutional violation because you can find the constitutional violation. It can be clear as day, as apparently the Fourth Circuit thought it was here, and it still doesn't call into question the fact that he was caught with this chemical and all that evidence. It's an unusual case for expungement where you have a constitutional violation that has not, in fact, cast into any doubt the reliability of the conviction. Well, the conviction was vacated. So I guess I'm not exactly sure what Your Honor means by casting into doubt the reliability. Well, the facts stand. The facts are as they are on the record. They're not favorable for your client. Your Honor, he's not my client, but I take your point, yes. Yes, the person in whose favor I'm arguing, I suppose. Yes, but this is about whether or not jurisdiction exists, as Your Honor has pointed out, and courts have been very clear about the rule that they require. Why don't we explain something that's perfectly accurate? I mean, it says the records say the original disposition has been overturned. The case was thrown out by a judge's order. The record is, strictly speaking, accurate as to the factual steps of what happened. It doesn't change the fact, though, that the entire proceeding was unlawful. It's less and less transparent. We're just simply trying to hide the ball from everybody. I guess he wanted the conviction expunged in order to get a license for guns or whatever, but there's a danger in these expungement records, in these expungement activities, and it's simply we hide the ball from the public. We're making ourselves less transparent. We're not giving other parties information that they may need to make a decision on their own. Your Honor, I want to emphasize just how narrow the exception is to the general rule that courts don't have jurisdiction to hear expungement petitions. In this case, it's somewhat unusual because not only was both his arrest and both of his convictions were vacated, in fact, twice, but there's already a court ruling so holding, so no additional fact-finding or court consideration is necessary to decide whether they were unlawful or not. You want to explain the court ruling, though, don't you? The court ruling holding that the convictions were unlawful would need to be expunged along with. Okay, so every judicial decision upholding a constitutional right and vacating a conviction should hereafter be expunged. No, Your Honor. Maybe there won't even be precedent at that point. No, Your Honor. Only in circumstances where a person's entire criminal proceeding was invalid and where there's already a court ruling. That happens a lot. That happens a great deal. If that's your rule, I mean, this doesn't, we don't have ancillary jurisdiction here. It does not meet the covenant of factors. That decision was emphasized. It was a unanimous decision. It was written by Justice Scalia. It was emphasizing right at the outset that federal courts are courts of limited jurisdiction. This isn't factually interdependent. It's 14 years after dismissal of the case and 20 years after the arrest. It's not necessary for the court to vindicate its authority. A court vindicated its authority when it followed the mandate of this court and dismissed the case. And this is a court, the Supreme Court is a court that has some respect for formality and the concept of ancillary jurisdiction extended in the absence of statute to a situation 15 years after the fact is not going to fly. It just isn't. It reads Congress completely out of the picture. And it creates a conflict with five different circuits which have held in situations comparable to this that the covenant factors, prongs, are not met. And if you say, no, this is not equitable, it's a question of law, there is no statute in Congress. There are statutes providing for expungement and related remedies in narrowly defined circumstances. Congress considers this in detail, and they are not here. This is not one of those circumstances. Your Honor, I would point you to the four other circuits that have stated that ancillary jurisdiction exists to expunge unlawful arresting convictions, and I see that my time has expired. But I'm happy to continue. Please proceed. May it please the Court. My name is Rachel Barish Swartz. I represent the United States. I'd like to pick up where this Court left off in its discussion with Amicus, and I would like to agree with Judge Wilkinson that this request is equitable. Mr. Medetol received his remedy in this case. There was a Fourth Amendment violation, and the evidence, the ricin, and the false identification he held were suppressed. That's the remedy in this case. Can I ask what you mean when you say it's equitable? Because I think when I am using that term in this context, I understand there are two different grounds on which you could seek to have a conviction expunged, and one would be for equitable reasons. I have a clean record. It's a lawful conviction, but for equitable reasons, you should expunge it anyway. And the other is, no, I would like to have it expunged because it was unlawful. And it seems to me he is making that. Do you agree that he is also making that second argument, that this should be expunged because it was an unlawful conviction? I agree that he's making that argument. I do not agree that he's correct, that it takes it from a legal request, that it takes it from an equitable request to a legal request. He puts it in this category where something like four other circuits have said, although we cannot, perhaps you disagree with the terminology they're using, but I'm right about the state of the law, right? Tell me if I'm not, that there are a bunch of circuits that have said, although we do not have ancillary jurisdiction to consider a request for expungement that is based of a lawful conviction based purely on equitable reasons, we do have jurisdiction to consider a motion to expunge an unlawful conviction. And we would be the first circuit to say that is wrong if we were to say that, right? Well, first of all, the circuits that have said that all say that in dicta. In each of those cases, they denied expungement. On purely equitable grounds. On purely equitable grounds. And in United States v. Field, and why – I just want to make sure I understand the state of the law. You are asking us to be the first court of appeals to say those other four courts of appeals, what they have stated is incorrect. No, because in United States v. Field, the Sixth Circuit said that a request like this, a request for expungement based on a lack of probable cause, even in the very first encounter between police and the defendant, is equitable. So in United States v. Field – So I don't – I'm not understanding. So they – The question was, whatever you call it, equitable, legal, because I also agree that there's a little bit of fuzz in the law here, but I had thought that the Sixth Circuit said that there is an exception for motions challenging an unconstitutional conviction or an illegal arrest or otherwise based upon a constitutional claim. That's an exception to co-canon. They did say that in dicta. Right. Because what they – And the only thing that – the question was, there are these four circuits who have said it, maybe in dicta, and we would be the first appellate court to hold contrary to what they said. Is that correct? This court does not need to make that holding to find – If we did, would we be the first court? This is – I'm asking for information. Have I missed a case or not? There is – no, there isn't. You have not missed a case. Thank you. I'm still perplexed as to where we get the jurisdiction to expunge if the co-canon factors are not met, as Judge Moon found that they were not met, and if there is no statute giving us the right to expunge. If the jurisdiction is not to be found in co-canon and the jurisdiction is not to be found in statute, and, in fact, there is no claim under any statutory provision that expungement would be – that expungement is required by virtue of any statutory provision, and co-canon has laid down the rule. Ancillary jurisdiction and the exercise of ancillary jurisdiction is not in favor at the Supreme Court. There's a certain degree of formality in law that they're following there, and ancillary jurisdiction is loose, and it's particularly loose where somebody waits 20 years to bring an action for expungement. And I have no idea about these circumstances. We'd have to have a hearing on them 20 years after the fact with what kind of stale evidence. I don't know. And what constitutes harassment? Was it really true that he couldn't get his gun because of the records, because of the prior conviction, or was there some other disqualifying factor? Was he denied staff privileges because of some other disqualifying factor, or people are denied staff privileges in hospitals for all kinds of reasons? So I don't – but that seems to me – those matters seem to me collateral to the case, not factually dependent upon the case, a separate proceeding, not necessary to the vindication of the court's authority because it takes place – the vindication of the court's authority was accomplished when the conviction was vacated. And nobody's – there's been no defiance of that mandate or an attempt to reinstate the conviction. It was vacated. The court's authority was satisfied. So I don't understand what the source of this jurisdiction was. And even if we possessed it, which I don't think we do, expungement simply seems impossible under these circumstances because we would be adding an implied remedy to the remedy that Congress has supplied, which is the suppression. And that balances privacy interest and individual interest against public interest. And that's an implied remedy, but it's all – it's accepted. But to add an additional implied remedy that Congress hasn't enacted on top of the suppression remedy, which Congress did enact, which was a remedy which balanced out these interests. It's up to Congress to balance out these interests or maybe the Supreme Court. But to add one implied remedy over another implied remedy in the absence of any action from Congress and when it's well outside the cocooning factors is just an exercise of ancillary jurisdiction that is elastic and it is a huge stretch. I completely agree with Your Honor. Can I ask you a question? Yes. I'm sorry if you wanted to comment. Go ahead. If you were to just assume for a minute, not to read anything into it, that I thought the district courts did have ancillary jurisdiction over a motion to expunge an unlawful conviction, is there any other ground on which we could affirm or do we need to reach that jurisdictional question? I mean, what if I thought hypothetically that the district court had jurisdiction but there's no way this guy should get expungement? You could still affirm on the grounds that possibly there's some jurisdiction, but there's no jurisdiction in this case. But we have to reach a jurisdiction question. That's what I'm trying to figure out. That's what I think the question is. Is there a way to affirm without deciding this jurisdiction question? The court below only reached the jurisdiction question, but there is no court that has ever found jurisdiction for expungement in a case like Mr. Mettaton. Sometimes people do that and say, in the textbook jurisdiction is supposed to come first, but there are courts that have said, even assuming that we have the right to rule on this question, this is not a case where expungement would be warranted. Since Kekkonen, no court has granted expungement for any unlawful arrest. Would we know for sure if they had? I was sort of wondering about that, and I know your colleague raised this in the brief. As we've been discussing, if an order of expungement is granted, doesn't everything sort of disappear? Well, I think you can see by we are in the briefing, we are able to cite cases granting expungement. I also did an additional Westlaw search, and there are additional district court opinions, some of them recent, granting expungement. None of them are in any way like this case. When do they grant? Sorry? I'm sorry, what are they? They would be statutory, but they are available. Are there cases that you have found in your extensive research that are under the second exception talked about in Kekkonen? No, I have found absolutely none. Then I think we're back where my colleague's question to you was. Do we really know? Well, the point is, and then other cases when expungement is granted, they change it to Doe. So my point was that the case law would still be available. Oh, so that's an answer to Judge Wilkinson's concern. It's not that all the Fourth Amendment precedent in the world disappears. It's that the means get changed to Doe. So, I mean, this is his point that it probably exists. All the cases vindicating constitutional rights, they wouldn't be if they're expunged, then they're no longer present. They're gone. Or do they just change the name to Doe? I believe that the name. We can't use the body of case law because it's been vacated that would vindicate a constitutional right. I think you can still use a published decision where the name has been changed to Doe. I'm not sure. If it's been expunged, no. Well, the conviction's been expunged, but you're saying the case stays on the book and they just change the name. I have found in my research that that is how this is handled. And Amicus's point, therefore, that cases could have been granted, like Mr. Metatol's and we wouldn't know, I think is incorrect. Because it would be there. It would be there and it would be changed to Doe. Or sealed. I've seen sealed appellant versus sealed appellee. The United States versus field, Amicus attempts to distinguish it, but it is incredibly close to Mr. Metatol's case, and they found no jurisdiction. Amicus's argument is that because the arrest, which was the first encounter between the police and Mr. Metatol, lacked probable cause that the entire proceedings are, therefore, illegal and should be expunged is exactly what happened in United States versus field. In that case, the first encounter was a seizure. It wasn't an arrest. It was the search lacked probable cause and, therefore, it led to arrest. But it was still this very first encounter lacked probable cause. And in that case, the court held, quote, the suppression remedy fully effectuated the district court's rulings that the FBI agent violated field's constitutional rights. Because the suppression remedy fully effectuates the ruling, there is no jurisdiction. But the point is that however you get to it, and there's an overlap, I suppose, to some extent, between the jurisdictional inquiry and the merits inquiry here in this situation, but however you get to it, this can't be a case for expungement. The equitable thing, the equitable prong of it simply doesn't meet any of the Kokonin factors. And the legal prong of it is, again, very suspect because Congress is the one that confers jurisdiction upon us, and it confers, and it has addressed this area. And it has not provided a statutory ground of relief. And as far as the courts are concerned, in terms of granting expungement on the basis of legal error, they've looked for exceptional circumstances, and not simply an arrest without probable cause or an illegal search, which is wrong as they are, and courts exist to vindicate those. They didn't indicate anything about whether the individual was actually guilty or not. But however you get to it, this can't be a case for expungement. There just aren't the kind of circumstances that would justify it, even if we had the authority to create a set of circumstances that would justify it. They're not here. If we did it here, we'd be doing it in every case. We would have enacted the statute on our own. I agree with Your Honor, and I would also just add that the legal portion has not only been taken care of by Congress in that there's not a statute, but it has clearly been taken care of by the Supreme Court and this Court's Fourth Amendment jurisprudence. What the courts have said in holding this authority open is that, look, as I read the cases, and you can tell me if I'm getting something wrong, there ought to be jurisdiction to consider expungement when it comes to unlawful convictions, because we can imagine the egregious case where it would be required to expunge. And I can't remember which circuit it was, but they talked about a case where the government had arrested black voters on their way to the polls. And now they had these, and the convictions, or I guess the arrests were not prosecuted, but they had these arrests on their record. And the court thought, in a case like that, it's not enough to say you have to let these people go. We have not vindicated our authority by doing that. We're going to have to do more. We're going to have to expunge the record of the arrests in order to That's not this case. This doesn't look to me like that is this case. And so what I'm trying to figure out, along with these other circuits, is I am, just assume for a minute, I am persuaded by the reasoning of these circuits that there could be cases where vindication of the court's order under the second prong would require expungement. I don't think this is that case. Is there a way I can kind of preserve the jurisdictional issue and decide the case the way you think it should be decided? Was that a clear question? Yes. Okay. And they're assuming that there is some category of jurisdiction for the cases that you're talking about. This case, jurisdictionally, is still distinguishable because there has been a complete vindication of Mr. Medetol's rights under the Fourth Amendment by suppression. The difference is that the Supreme Court, and I quote this court in Brooks v. City of Winston-Salem, has rejected the proposition that a defendant possesses a liberty interest in avoiding prosecution upon less than probable cause. And, therefore, the remedy is suppression. But in those other cases, there could be a case with a personal right that was not vindicated by suppression. So the right not to be harassed by the government for free expression was not, in those other cases, already vindicated by suppression of evidence. So there's a way you think of sort of almost combining the merits and the jurisdictional inquiries so that you could say they're, I think I understand what you're saying. They're tied up to a certain extent here. And I don't think any court has gone so far, whether you approach it through jurisdiction or whether you approach it through expungement, that any court has gone so far as to order expungement in these sort of circumstances. If you order it here, you would order it everywhere. And the case that the courts have hypothesized might justify expunged would be something, I guess one of them, was a mass arrest of civil rights demonstrators where the arrest was totally without any kind of probable cause. And there was just a huge police roundup of people at a protest meeting or a civil rights protest. But this is so far away from that that we can affirm, on any ground, and whether you approach it jurisdictionally, as I think it's permissible to do so, because I think ancillary jurisdiction is a very soggy concept, or whether you approach it as does this case warrant expungement. You can merge the two inquiries, really. I agree with Your Honor. And the circuits that have, and I, again, stress, they only said this in dicta and did not grant expungement in any case, they did tie those two inquiries together. Although they used the term, and they all used different terms, unlawful arrest, illegal proceeding. But they all cite, in using that phraseology, they all cite to the same cases in saying what they mean by that phrase. Most of those cases, but that's not, but we don't have here illegal arrest. Exactly. But the claim here is that. But they have, but they use, when they use the phrase illegal arrest, they cite to Sullivan v. Murphy, all of them. They cite to Sullivan v. Murphy, or they cite to Schnitzer, which cites to Sullivan v. Murphy, or they cite to Friesen, which cites to Sullivan v. Murphy, and United States v. McLeod, and Coal v. United States. In using that phraseology, if you look down to the bottom of what those cases are cited to that are saying, they are all this really extraordinary case where it's a lack of probable cause, plus more, because there was a right that was not vindicated by suppression. Has there been a court that's granted expungement in a circumstance like this? I'm sorry, Your Honor, I just. Has there been a court that's granted expungement in a circumstance like this? Not a single case before Kekkonen or after Kekkonen has granted expungement in a case like this. And unless the court has any other questions that. Hold on a second. No. Do you have any more? No. Thank you, Your Honors. Mr. Counsel, the reason I think this may be an equitable case is because he knew immediately that what the result of the legal proceeding was, and that his case was dismissed. But he only brought this claim 15 years after, or 14 years after the case was dismissed. And it was only after these equitable grounds had appeared that he brought the case for expunction. If it had been the legal case that you say, that would apparently have been brought sooner rather than later. But this case for expunction was raised only after the equitable considerations that are alleged emerged over time. And I would say that having expunction on those kinds of bases puts upon district courts the obligation to hold hearings, to find out what the cause of all these mishaps was, to find out why he wasn't granted staff privileges, to find out what harassment he's alleged, to find out why he couldn't get the permit to carry the firearms, all of these things, because there could be many explanations for those things other than the prior conviction. So the district court interpreted this as an equitable petition, and given a long time delay, and the fact that it was really filed only after the equitable grounds allegedly emerged, I don't know why it isn't a pure equitable matter. Well, the delay, Your Honor, may be something to consider at the merit stage, but I have seen no cases supporting the idea that there's any kind of influence of delay on whether or not the court has jurisdiction. The trigger for jurisdiction is whether or not there's an unconstitutional arrest or conviction and whether or not there's an extant court ruling, so holding. I think that will obviate Your Honor's concern about having a bunch of district court hearings. But your position is that you can have a conviction vacated, wait 14 years, then file a petition with all kinds of equitable considerations and say that that warrants expungement. You can say that the court has jurisdiction to consider that. Yes, Your Honor. And then you could reach those questions at the merits phase. But I think jurisdiction exists in this case, and Mr. Medetol's motivation for filing, it does not play into the jurisdictional question. So on that point, you heard our dialogue with your colleague on the other side and the suggestion that we could somehow roll jurisdiction and merits all together, in our opinion. What do you have to say about that? It's not necessary for you to do. All this court needs to do is find that jurisdiction exists to hear the petition and it could then remand to the district court. I know it's unnecessary. Is it possible? It's possible to find that because there is an extant decree of this court, which is that the convictions were unlawful because of the unlawful arrest, therefore everything that happened in this case was unlawful, you would grant jurisdiction in order to vindicate that decree, and then you could go ahead and vindicate that decree. No, is it possible to find jurisdiction and still affirm what the district court did? I think it's possible. I think at that point you would need to remand for a consideration of the merits. And why is that? Because the court never reached the merits. The court stopped at the jurisdictional question. This is a concern I have about the petition. So, I mean, I actually do, I see the part in the petition where, you know, there's two reasons why there ought to be expungement, and the first one is this, I don't know what label to use, but because this was an invalid arrest and conviction. Yes. But there's not a single other thing alleged, and it's not a complaint, but there's not another thing in here that goes to the question of, was this the kind of illegal conviction that might warrant expungement? There's nothing about bad faith by the police. There's nothing about egregious misconduct. There's nothing. It just seems that remanding might be a bit futile because there are no facts in here. There's no case being made for why there ought to be that kind of expungement. I agree that it's sort of asked for as a legal matter, but there's just nothing to back it up. All the backup information goes to the second request, which is just equitable grounds. I've kept a clean nose, and I need a gun and whatever. So there have been other circuits. Mayor of the Eighth Circuit is one, Smith, which cites Maurer from the Ninth Circuit, is another. Lynn from the Tenth Circuit is another that have granted expungement petitions in the absence of extraordinary circumstances as the government defines them. So your position is you don't need those kinds of extraordinary circumstances? Correct. The unconstitutional arrest or conviction is itself an extraordinary circumstance that may warrant expungement. Extraordinary circumstances goes through the pre-Kokonen cases. That's where it was talking about. That's where they come from, right, and there are no opinions weighing these in the post-Kokonen context on the merits. Why would Kokonen make it easier? Kokonen narrows ancillary jurisdictions, so I don't see why those wouldn't be at least remain good authority to the extent they suggest it's hard to get expungement under ancillary jurisdiction. Well, I think that's a jurisdictional question, and I think that Kokonen doesn't address the merits of whether expungement should be granted. So there's no suggestion. Kokonen wouldn't fall into question in those older cases. Well, maybe I'm misunderstanding Your Honor's question, but I think that Lynn Smith and Mayer all find expungement on that. One of the questions is when you have a petition, and I come back to the point that, you know, if it was all about illegal conviction, why wouldn't it have been filed sooner? And then when you file a petition that, as Judge Harris notes, is bottomed out on these equitable considerations, you're stuck with that, and that's basically what this person was asking, is that as a result of these five different things, all post-conviction that have occurred, and he's saying, look, I've had a record of good behavior, 20 years have passed since the arrest, and then I've been harassed, whatever that is, I can't get staff privileges, maybe so, maybe not. We don't know what the cause of any of that is. It's just alleged. Whether it's true or not, we have no idea. But it is basically equitable in nature. And if you try to slide out of that and say, no, it's all about the conviction, that's at odds with the petition that was presented to the district court. But moreover, it just doesn't square up with what other courts have done and with the fact that Congress has not provided authority for us to grant expungement in these circumstances. Now, the harder case comes down the line where there are maybe something that is unusual and egregious. But if expungement were ever to be ordered as a matter of course, which it would be if we granted it here, that would be something Congress would have to enact a general statute covering. And there's no limiting principle, no limiting principle in this case, if we grant expungement here. Your Honor, I disagree that there's no limiting principle. I think that Field gives a very clear limiting principle, which is that if there's no court ruling that already exists holding the arrest unconstitutional, then there's no jurisdiction. Not only do you have to have an unconstitutional arrest or conviction, you have to have an existing court order so holding. And that, I think, limits this a lot. No, when I say there's no limiting principle, I mean the fact that, you know, this court fortunately vindicates Fourth Amendment rights on a fairly regular basis. And if all of those, you know, are going to be expunged, I question the precedential value of those cases. And what, you know, and that's just for starters. I think you were correct and candid when saying this is one of those situations where the ancillary jurisdiction inquiry does overlap with the merits, because in order to answer the ancillary jurisdiction inquiry, you have to look into the conconin factors. Can I ask you a question? Yes. To get to this second ground in which the conconin court said that you could have ancillary jurisdiction, the court cites one, two cases, one old one and one new one. Neither one of those involve any of the kinds of extraordinary circumstances, the rounding up of the people, the civil rights group, for example, that were a measure of the pre-conconin relief. One of them involves a power to compel payment of opposing parties' attorney's fees as a sanction for misconduct. And the other one is a contempt order to maintain order during proceedings. So there's nothing in conconin itself that so we would be going a step further if we would combine, if we could look at conconin and say, yes, the whole opinion is narrowing this jurisdiction, and therefore this pre-conconin case law about special cases should be imported into it when we're talking about the second exception. We would be reading, over-reading conconin, we would be making some new law that's not there, right? Well, I think that the fact that the court didn't give specific examples of every single time ancillary jurisdictions have been exercised. Well, I'm suggesting this helps you. In other words, it didn't give the example of the rounding up the people and the civil rights. It seemed to be that vindicating its order could be a lot more ordinary, run-of-the-mill stuff. I certainly agree with that, Your Honor, yes. So that would be what we're trying to tease out now, I think, is I think all three of us, I just guess from I've gotten out into moral argument, are a little leery of thinking that the person for whom you are arguing, not your client, would be ultimately entitled to expungement. But the question is, should we make that step right now, or should we just decide whether the district court had jurisdiction? I respectfully don't think that there's a basis for your honors to find that jurisdiction exists, but the petition should be denied on the merits. I don't think the district court ever reached that issue. And the further question is, is there any way that on these kinds of facts, not the particular facts here, but on these kinds of facts, a court could grant expungement? There absolutely is, and I would urge you to look at United States v. Meyer out of the Eighth Circuit, which holds that an unconstitutional arrest or conviction is itself an extraordinary circumstance. Lynn is a merits case. That's a Tenth Circuit case in which it was addressing whether or not an expungement could be granted for an unconstitutional arrest or expungement, I forget which it was, but it wasn't about jurisdiction. It actually reached the merits. I don't know how you resolve the jurisdictional inquiry without looking at the two. I think there's a conflation here because I don't know how you resolve the jurisdictional inquiry without looking at the two Caconan factors, because that's what gives us, the Caconan factors are what give us ancillary jurisdiction. And in order to resolve the jurisdictional inquiry, we have to look at the Caconan factors. And then we have to answer the question of whether as a purely equitable matter there's jurisdiction, which the circuits have said, no, there's not. And this is a petition which sounds inequity to me, very definitely sounds inequity. And so it seems to me that you can affirm on an alternate ground, but it's really not an alternate ground in a sense, because in order to answer whether we have jurisdiction, we have to look. We have to absolutely look at the Caconan factors. There's no way of getting around it. I think it would be hard for this court to find that no jurisdiction exists if it wanted to square its holdings with the four other circuits that have spoken to this matter. But I don't know of a court that's granted jurisdiction in these instances. I keep coming back to the fact we're trying to read Congress totally out of the picture. This isn't an area that's escaped Congress notice. There are six statutes on the books, six. There are other statutes that have been introduced to broaden the expungement remedy, but they got nowhere. And they've limited, Congress has limited this, the exercise of federal expungement jurisdiction. It's a corollary to Colorado River where Congress has given us jurisdiction. We exercise it, but where Congress has not given us jurisdiction, we don't reach out and grab it. And ancillary jurisdiction is not going to meet in favor with the Supreme Court. It's elastic. It's very fuzzy. It's very litigious. And Congress hasn't. And if we adopted it, Congress would, we would read Congress out of the picture in an area in which it takes an intense interest. Well, I think it's worth considering that perhaps Congress hasn't spoken to this precise issue because the courts that have spoken to it have all been very consistent. And they've all been consistent in holding that jurisdiction does exist here under the court's ancillary powers. I think that's a tricky inference. That is very tricky. Anyway, we've given you some good time. I'm going to ask my fine colleagues if they have any additional questions. Thank you. Okay. She was appointed. You might want to say something. Oh, I see you're court-appointed. And I do want to thank you very much for the dedication and skill with which you've advanced your client's argument. That's not a client.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Pamela A. Harris